**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-33 |
| | ) | Civil Action No. 19-1585 |
| GREGORY MAGEE, | ) | Senior Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.      INTRODUCTION

In this case, Defendant Gregory Magee seeks relief from his sentence of 87 months' imprisonment following his convictions for 2 counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d) and 4 counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  Specifically, he moves under 28 U.S.C. § 2255 to vacate, set aside or correct sentence based on alleged ineffective assistance of counsel at his sentencing.  (Docket No. 93).  He also moves under 18 U.S.C. § 3582(c)(1)(A) for compassionate release based on the COVID-19 pandemic and his underlying health conditions, including heart disease, among other ailments.  (Docket Nos. 112; 125).  The Government opposes Defendant's motions which have been fully briefed and supplemented with Defendant's medical records and other pertinent evidence.  (Docket Nos. 102; 109; 111; 114; 129; 131; 134; 136; 137).  After careful consideration of the parties' positions, and for the following reasons, Defendant's motions, (Docket Nos. 93; 112; 125), are denied.  Specifically, the Court finds that Defendant has failed to demonstrate that he was prejudiced by any alleged ineffective assistance by his counsel at sentencing and otherwise declines to exercise its discretion to reduce his sentence for compassionate release under § 3582(c)(1)(A).

1

II.     BACKGROUND

*A. Relevant Facts*

On July 10, 2018, Defendant pled guilty to all six counts in the Superseding Indictment against him pursuant to a plea agreement with the Government.  (Docket No. 64).  He admitted that he robbed six different banks throughout the Western District of Pennsylvania between January and November of 2016, stealing a total of $119,696.00.  (Docket Nos. 12; 64).  He was 46-47 years old at the time of his criminal conduct.  (Docket No. 74 at 1).  He wore disguises shielding his appearance and brandished a firearm and/or made a threat of death to tellers during each of these robberies.  (*Id*. at ¶¶ 8-15).  To this end,

- On January 20, 2016, he brandished a firearm at the tellers at a First Niagara Bank branch in Cranberry Township, Butler County, and stole $5,526;

- On February 29, 2016, he brandished a firearm at the tellers at First Merit Bank in New Castle, Beaver County, Pennsylvania and stole $10,126;

- On March 31, 2016, he threatened tellers that he had a gun at a First Niagara Bank branch in McMurray, Washington County, Pennsylvania and stole $9,133;

- On June 8, 2016, he threatened tellers that he had a gun at a First Commonwealth Bank branch on Forbes Road in Pittsburgh, Allegheny County, Pennsylvania and stole $3,709;

- On August 11, 2016, he threatened tellers that he had a bomb at Citizens Bank in Beaver Falls, Beaver County, Pennsylvania and stole $12,559; and,

- On November 8, 2016, he threatened tellers that he had a bomb and displayed a bag with protruding wires to them at an S & T Bank branch in Monroeville, Allegheny County, Pennsylvania.  He demanded access to the vault which was granted and stole $78,643.

(*Id*.).  Defendant was apprehended after the last robbery and found by law enforcement hiding in a drainage pipe in a wooded area near the bank.  (*Id*. at ¶ 14).  A loaded firearm was seized from

his personal vehicle.  (*Id.*).

As part of the plea agreement, Defendant pled guilty to Counts 1-6 and the Government agreed to dismiss Counts 7 and 8 which charged Defendant with two counts of brandishing a firearm in furtherance of a crime of violence both of which required a mandatory, consecutive penalty of seven years (84 months) and up to life imprisonment.  (Docket No. 62-1).  The parties stipulated to the computations of the advisory guidelines range of 87-108 months' incarceration and that Defendant would "not seek any departure of variance from the Sentencing Guideline range."  (Docket No. 62-1 at ¶ C.10).  The parties further agreed that Defendant would pay $119,696.00 in restitution to the banks and forfeit the firearm seized from his vehicle as well as the $78,643.00 seized from his person on November 8, 2016.  (*Id.*).

Relevant here, the Presentence Investigation Report ("PIR") was consistent with the parties' plea agreement as it contained the same computations as to the advisory guidelines range and recommended the same amount of restitution and items to be forfeited.  (Docket No. 74 at ¶¶ 20-70; 107; 119).  The PIR further stated the following in the "Physical Condition" section:

> 83. The defendant described himself as a 5 foot 7 inch tall, 160 pound man with brown eyes, and brown hair. The defendant reported no tattoos, but advised that he has scars on his chest from heart surgery.
>
> 84. The defendant stated that he suffers with severe coronary artery disease. Reportedly, he had heart by-pass surgery at UPMC Presbyterian Hospital, Pittsburgh, Pennsylvania, in December 2014, due to 5 clogged arteries. In January 2015, the defendant advised that he had another heart procedure and that he was stented three additional times in 2015 at UPMC Shadyside Hospital. The defendant noted that his cardiologist is Dr. Ricci Manella and his primary care physician is Mary Ellen Schroeder. Records, dated May 26, 2015, were received from Dr. Manella. The records confirmed that he provided care to the defendant for his underlying coronary artery disease, bypass surgery, gastritis, duodenitis and multiple coronary stents. The record indicated that the defendant was doing well at that time.

3

> 85. According to the defendant, he was hospitalized at St.
> Elizabeth's, Youngstown, Ohio, on two occasion[s] while in prison
> in 2017. The first time was for chest pains and the second time was
> for low pulse and blood pressure. He indicated that he has more
> blockages, but they are too small to stent. The defendant advised
> that his current prescriptions are Lipitor, Ranexa and Nitroglycerin.
> Prison records received confirmed that the defendant had follow-up
> care for his heart condition and is currently taking aspirin,
> Atorvastatin Calcium, Bupropion, Fluoxetine, Nitroglycerin and
> Ranexa.

(*Id*. at ¶¶ 83-85).  No objections were lodged to these portions of the PIR.  (Docket Nos. 78; 80).

As Defendant agreed not to move for a downward departure or variance in the plea agreement,

defense counsel filed a Sentencing Memorandum on his behalf arguing for a sentence at the low

end of the advisory guidelines range of 87-108 months' incarceration.  (Docket Nos. 84; 85).

Among other things, the Sentencing Memorandum noted the severity of Defendant's heart

condition, including prior bypass surgery in 2014; his filing of multiple grievances over treatment

of his heart condition while incarcerated at the NEOCC; and the fact that he was hospitalized at

times while in pretrial detention due to ongoing heart issues.  (*Id*.).  Defense counsel likewise

presented a series of letters and other evidence which were attached to the Sentencing

Memorandum and referenced his cardiac condition. (*Id*.).  The Sentencing Memorandum pointed

out other mitigation evidence including his prior work history; academics; volunteer work;

Klonopin addiction; and post-offense rehabilitation.  (*Id*.).

At the sentencing hearing, the Court adopted its Tentative Findings and Rulings and the

parties' recommended advisory guidelines range of 87-108 months' incarceration. (Docket No.

101 at 7). The Court noted Defendant's cardiac condition in its findings of fact on the evidence

presented in advance of the hearing.  (*Id*. at 9-10).  Defense counsel brought up his heart issues in

her argument and Defendant referenced the same during his allocution, at which time he also

4

recognized the fact that he had frightened and traumatized bank employees and customers by his menacing conduct during the six robberies. (*Id*. at 12-15, 19, 20-36). Of course, the Government countered by pointing to the severity of Defendant's conduct robbing six banks in five counties across our District; the calculated methods used to pull off each robbery; and, the need to provide just punishment for the offense, to deter Defendant and others. (*Id*. at 15-18).

After hearing further argument from the parties, this Court sentenced Defendant to a term of 87 months' imprisonment at the low end of the advisory guidelines range, followed by a five-year term of supervised release. (Docket No. 89). He was also ordered to pay $119,696.00 in restitution and to forfeit the firearm and $78,643.00 seized from him. (*Id*.). Defendant did not file a direct appeal of his conviction or sentence. The forfeited funds were later applied to the restitution, reducing the amount due and owing by Defendant from $119,696.00 to $41,053.00. (*See* Docket No. 102-1, *Summary Debt Balances as of 12/20/19*).

Defendant was transferred from the NEOCC to FCI Elkton on January 15, 2019. (Docket No. 129-5). He remains at FCI Elkton and has a projected release date of January 13, 2023. (*Id*.). Defendant's medical records reveal that he is currently 51 years old and suffers from heart disease; and low blood pressure or hypotension. (Docket Nos. 116; 131). As noted above, Defendant previously underwent a five-vessel coronary artery bypass grafting in August 2014 and had stents placed in December 2014 and January 2015. (PIR at ¶ 3). While in custody, he has required treatment for his heart condition at medical facilities outside of the institution on several occasions. (Docket Nos. 116; 131). In January 2019, he was admitted to Trumbell Medical Center after complaints of chest pain and had another stent successfully placed. (*Id*.). He was admitted to Trumbell Medical Center with chest pains additional times in July 2019, March 2020 and July 2020 but no further surgical procedures were performed. (*Id*.). After his most recent admission

in July 2020, Defendant was returned to FCI Elkton with a recommendation of outpatient follow-up care.  Defendant is also prescribed a number of medications.  (*Id*.).  All told, it appears that Defendant has been provided with adequate medical care during his period of incarceration.

During the early months of the pandemic, FCI Elkton experienced an outbreak of COVID-19 cases.  Although he presented as asymptomatic at the time, Defendant was tested for COVID-19 in May 2020 with a negative result.  (Docket No. 116 at 2).  He has not presented any evidence that he has become infected with COVID-19 since that time.  (*See* Docket Nos. 112; 116; 125; 131; 134; 136).  The BOP currently reports that FCI Elkton has 3 positive cases among inmates and 1 among staff.  *See COVID-19 Cases, available at*: https://www.bop.gov/coronavirus/ (last visited 11/6/2020).  While serving his sentence, Defendant engaged in the following post-offense rehabilitation efforts: completed a nine-month advanced culinary arts program; earned a Serve Safe Certificate; participated in drug and alcohol education programming; and has no record of disciplinary infractions.  (Docket No. 112-5).  He has also served as an NA sponsor for other inmates and expressed continuing remorse for his involvement in these offenses.  (Docket No. 136).  Defendant admits that he does not have a home plan and suggests that the Court reduce his sentence to time served and order him to serve a portion of his term of supervised release at the Renewal Center in Pittsburgh.  (Docket No. 134).

B.  *Procedural History*

On December 10, 2019, Defendant filed his § 2255 Motion arguing that his counsel was ineffective at sentencing because she failed to investigate and alert the Court to his deteriorating heart health and further failed to ensure that the sentencing record was correct relative to restitution because the forfeited funds were allegedly not applied to the restitution balance.  (Docket No. 93 at 5, 6).  He did not respond to the Court's *Miller* Order which provided him an opportunity to file

an amended petition raising additional claims.   (Docket No. 94).   The Government filed its response in opposition on March 5, 2020.  (Docket No. 102).  Defendant replied on May 14, 2020. (Docket No. 109).  Briefing concluded as to the § 2255 motion with the Government's submission of its sur-reply on June 1, 2020.  (Docket No. 111).

Prior to seeking relief under § 3582(c)(1)(A), Defendant applied for compassionate release to the Warden at FCI Elkton on April 6, 2020, and his request was denied on April 22, 2020. (Docket Nos. 114-1; 114-2).  He filed a pro se motion seeking compassionate release with this Court on June 5, 2020.  (Docket No. 112).  The Government filed a response along with pertinent medical records on June 19, 2020.  (Docket Nos. 114; 116).  Counsel was appointed to represent Defendant in his pursuit of compassionate release and a counseled motion seeking same was submitted on August 11, 2020.  (Docket No. 125).  The Government once again countered with a brief in opposition and additional medical records on August 25, 2020.  (Docket Nos. 129; 131). A counseled reply followed on September 14, 2020.  (Docket No. 134).  A pro se letter was received from Defendant on September 16, 2020.  (Docket No. 136).  All briefing finally concluded with the Government's sur-reply on September 29, 2020.  (Docket No. 137).

The pending motions are now ripe for disposition.

III.    DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). Two such specific authorizations are at issue here as Defendant moves for relief from his sentence under both 28 U.S.C. § 2255 and the First Step Act's amendment of 18 U.S.C. § 3582.  *See United States v.*

*Pawlowski,* 967 F.3d 327, 329 (3d Cir. 2020).   As noted, the Government opposes same.   The Court will analyze each motion, in turn, starting with the parties' positions as to the § 2255 motion.

### A.   Section 2255 Motion – Alleged Ineffective Assistance of Counsel

#### 1.   Legal Standard

A prisoner in federal custody may move to vacate his sentence under 28 U.S.C. § 2255 if such "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255(a).   As a collateral challenge, a motion under § 2255 is "reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).   Section 2255 relief "is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . .  is apparent.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

"A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x. 75, 78 (3d Cir. 2014), which were initially set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under Strickland, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in Strickland [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to

defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

A district court must order an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). If a hearing is not held, the district judge must accept the defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). The Court finds no need for an evidentiary hearing in this case because the record conclusively establishes that Defendant is not entitled to relief.

2. Analysis

Defendant contends that his counsel was ineffective at sentencing because she allegedly failed to provide sufficient evidence of his heart condition to the Court and also did not ensure that the forfeited funds were credited against the total restitution balance due and owing. (Docket Nos. 93; 109). The Government counters that defense counsel was not ineffective in her advocacy at the sentencing hearing and that Defendant was otherwise not prejudiced by the asserted errors. (Docket Nos. 102; 111). Having carefully considered the parties' arguments in light of the

evidence of record, the Court concurs with the Government that Defendant is not entitled to relief under § 2255.

As to the first asserted error, Defendant has failed to demonstrate that he was prejudiced by counsel's tactical decision to not present additional information (including detailed medical records) concerning his cardiac condition at the sentencing hearing. *See Strickland*, 466 U.S. at 697. To this end, the record clearly reflects that Defendant knowingly and voluntarily agreed to plead guilty pursuant to the plea agreement, including the terms pertaining to the stipulated advisory guidelines range of 87 to 108 months' incarceration and the concession that he not seek a departure or variance from that range. (Docket Nos. 62-1; 98). Defendant was then sentenced to 87 months' incarceration and therefore received the best possible sentence available under his plea agreement with the Government and could not have been prejudiced by his counsel's advocacy at the sentencing hearing. He also received substantial benefits under the plea agreement because the two § 924(c) counts carrying mandatory, consecutive penalties of 7-years' incarceration were dismissed by the Government. (Docket No. 62-1). Hence, Defendant cannot meet his burden to show that counsel's conduct fell below the standards of objective reasonableness and there is no reasonable probability that the outcome of the sentencing hearing would have been different if additional medical information been presented at the time. *See e.g., United States v. Brinson*, Crim. No. 15-87, 2016 WL 7035061, at *2 (W.D. Pa. Dec. 2, 2016) (holding that *Strickland* factors could not be met where defendant was sentenced to mandatory minimum penalty and defendant argued counsel failed to move for downward departure under Guideline § 5H1.4 based on his physical health ailments).

In any event, as the Court commented at the sentencing hearing, it was "well aware" of the Defendant's "cardiac condition, some of which arose during the pendency" of the case and had

been addressed at various status conferences.  (Docket No. 101 at 9-10).  The sentencing record was also replete with information concerning Defendant's heart ailments as the same were: detailed in the PIR; addressed in Defendant's Sentencing Memorandum; noted in the character letters and other evidence attached to same; argued by counsel during the sentencing hearing; and, discussed by Defendant himself in his lengthy allocution.   (Docket Nos. 74; 84; 85; 101). Accordingly, Defendant's § 2255 motion is denied insofar as he challenges his counsel's advocacy concerning his heart condition.

Moving on to the second asserted error, Third Circuit "precedent holds that the monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes." *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015).  Thus, Defendant's challenge to the alleged failure of his counsel to ensure that the forfeited funds, i.e., $78,643.00 he stole from S & T Bank in Monroeville on November 8, 2016, were applied against the restitution balance is simply not cognizable under § 2255.  *Id*.  Yet, Defendant's claim is also moot because the Government has presented evidence demonstrating that the forfeited funds were applied against the total restitution of $119,696.00, leaving a balance of $41,053.00 in restitution due and owing by Defendant.  (*See* Docket No. 102-1).  Given same, Defendant's § 2255 motion must be denied on this basis as well.

For all of these reasons, Defendant's § 2255 Motion is denied.

   B.  *Section 3582(c)(1)(A) – Compassionate Release*

      1.  Legal Standard

The Court next evaluates Defendant's motion for compassionate release.  Pursuant to § 3582(c)(1)(A), a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

In addition, the reviewing court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*United States v. Burrus,* Crim. No. 19-284, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) (citations omitted).

### 2.  Analysis

At the outset, the Government does not contest that Defendant has sufficiently exhausted administrative remedies as more than 30 days have elapsed since he made his request to the Warden at FCI Elkton.  *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) ("the statute states that the defendant may file the motion thirty days after the warden receives his request."). The Government also concedes that Defendant's heart disease, coupled with the ongoing COVID-19 pandemic, provide "extraordinary and compelling reasons" for release under § 3582(c)(1)(A)(i).   Accordingly, the primary dispute between the parties is whether the relevant § 3553(a) factors warrant a reduction in Defendant's sentence.

As the Court of Appeals has held, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. *See Pawlowski,* 967 F.3d at 329 ("[B]efore granting compassionate release, a district court must consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.") (internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3582(c)(1)(A).  In addition, under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g).  *See* U.S.S.G. § 1B1.13(2).

Having carefully considered all of the § 3553(a) factors in light of the present

circumstances of Defendant's health conditions and the ongoing COVID-19 pandemic, the Court declines to exercise its discretion to reduce the 87-month term of incarceration in Defendant's case, as such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing. *See* 18 U.S.C. § 3553(a).

In this Court's estimation, such sentence remains fair and appropriate, for the reasons stated on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FCI Elkton or another BOP facility. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *see also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

As to Defendant's specific risk factors, his age of 51 places him at higher risk to severe illness from COVID-19 than younger individuals but he is not yet over 65 or in the highest risk categories. *See Older Adults, Ctrs. for Disease Control & Prevention, available at:* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited 11/6/20) ("Among adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk.").  With that said, Defendant's heart disease is serious and an underlying condition that the CDC lists as having an increased risk of severe illness from COVID-19.  *See CDC, People with Certain Medical Conditions: Heart Conditions and Other Cardiovascular and Cerebrovascular Diseases, available at:*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited 11/6/2020) ("Having any of the following serious heart conditions increases your risk of severe illness from COVID-19: Heart failure; Coronary artery disease; Cardiomyopathies; Pulmonary hypertension.").   As to this ailment, the record reflects that Defendant previously underwent bypass surgery in 2014 and received multiple coronary stents over the course of his treatment with stents initially placed in 2015 and again in January 2019.   (Docket Nos. 116; 131).   The longitudinal medical records also reveal that Defendant has received ongoing treatment while incarcerated and has been transported to medical facilities upon complaints of chest pains and other heart-related issues on multiple occasions, including during the spring and summer of 2020.  (*Id*.).   Taken together, Defendant's age and heart disease place him at increased risk of serious illness should he contract COVID-19.

Next, Defendant is serving his sentence at FCI Elkton.   The Court has previously "considered the impact of the COVID-19 pandemic at FCI Elkton and recognizes that despite being 'one of the hardest-hit federal prison facilities in terms of Covid-19,' Elkton has 'shown signs that BOP measures designed to protect inmates such as visitation restrictions, mass testing, and modifications to facility operations are helping to curtail the spread of the virus.'" *United States v. Burnett*, Crim. No. 16-185, Docket No. 530 at 6-7 (W.D. Pa. Oct. 9, 2020). At present, there are three cases of COVID-19 among inmates at Elkton and 913 inmates have recovered. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 6, 2020). However, Defendant has not submitted any evidence that he has been infected with the coronavirus during his incarceration. (Docket Nos. 116; 131).   In fact, the medical records show that Defendant was asymptomatic and tested negative for COVID-19 in May 2020.  (Docket No. 116 at 2).  He has also treated at outside medical facilities on several occasions during the pandemic, without having any issues related to

14

COVID-19.  (Docket Nos. 116; 131).

Overall, the Court finds that the risks presented by Defendant's age, medical conditions and the COVID-19 pandemic do not outweigh the other § 3553(a) factors supporting the 87-month term of incarceration in his case, of which he has served slightly more than half (i.e., 48 months) to this point.  *See Pawlowski*, 967 F.3d at 330 ("we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.").  This Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct," simply do not justify the sentence reduction requested by the defense.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B).

To that end, the 87-month sentence reflects the seriousness and gravity of Defendant's criminal conduct in that he committed six different bank robberies across five counties in our District between January and November of 2016, stealing a total of $119,696.00. (Docket No. 74 at ¶¶ 8-15).  He used threats of violence in each of these robberies, brandished a firearm in two of them, and showed tellers a bag with wires that he claimed was a bomb in the last robbery.  (*Id.*).  He terrified bank employees and customers by his actions during these robberies.  (Docket No. 101 at 49-50).  While Defendant had a limited criminal history prior to these activities, specific deterrence is an important factor in this case because the record reflects that the robberies were methodically planned and his conduct escalated significantly to the point where he used a fake bomb to gain access to the bank vault in the last robbery.  (*Id.*).

15

The Court previously considered all of Defendant's personal history and characteristics when arriving at the 87-month sentence at the low end of the stipulated advisory guidelines range, including his age, education and work history, lack of prior criminal history, substance abuse problems, including a Klonopin addiction, post-offense rehabilitation and remorse. (Docket No. 101 at 49-55). To his credit, it appears that Defendant has made the most of his time incarcerated by avoiding misconducts and participating in a wide range of programming offered by the BOP, including advanced culinary arts courses and drug and alcohol education programs. (Docket No. 112-5). He has also served as a sponsor for drug abuse for other inmates and expressed continuing remorse for his involvement in these offenses. (Docket No. 136). At the same time, "such efforts by themselves do not constitute 'extraordinary and compelling reasons' to grant an inmate compassionate release under the statute" and otherwise do not tilt the Court's weighing of the section 3553(a) factors to justify reducing Defendant's sentence from 87 to 48 months' incarceration or releasing him more than two years prior to his projected release date. *United States v. White*, Crim. No. 14-178, 2020 WL 4350240, at *2 (W.D. Pa. July 29, 2020). Further, the 87-month sentence provides general deterrence to others and also promotes respect for the law while the substantial sentence reduction requested by the defense "would be inconsistent with the section 3553(a) factors," particularly given the substantial benefits he received by the dismissal of the two most significant charges carrying mandatory penalties. *Pawlowski*, 967 F.3d at 330.

Finally, the violent nature of these crimes show that if released early, Defendant may pose a danger to the community if he is unable to stay clean and use his educational background and considerable skills to pursue lawful employment rather than engaging in violent bank robberies to support himself. *See* 18 U.S.C. § 3142(g). Defendant also does not have a release plan and suggests that the Court should reduce his sentence and transition him to a halfway house. (Docket

Nos. 125; 134).  For the reasons already expressed, such request is premature and not appropriate at this time.

IV.    CONCLUSION

Based on the foregoing, Defendant's motions under § 2255 [93] and § 3582(c)(1)(A) [112], [125] are DENIED.  For the reasons explained herein, Defendant's § 2255 Motion fails to raise any meritorious claims and will be denied, with prejudice.  As to § 2255, the Court concludes that Defendant has failed to make a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability.   Defendant's motion for compassionate release is denied, without prejudice.  An appropriate order follows.


                                                            _/s Nora Barry Fischer_
                                                            Nora Barry Fischer
                                                            Senior United States District Judge


Dated: November 6, 2020

cc/ecf:  All counsel of record

        Gregory Magee
        USMS # 38300068
        FCI Elkton
        Inmate Mail/Parcels
        P.O. Box 10
        Lisbon, OH 44432
        (via first class mail)